# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NATHANAEL MATTHEWS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 12 C 2698 |
| DAISEY LOPEZ, JOANNE ANDERSON, LINDA VICK, and WESTSIDE HOLISTIC FAMILY CENTER, | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Nathanael Matthews has sued Westside Holistic Family Center and three of its employees (Daisey Lopez, Joanne Anderson, and Linda Vick), for race discrimination and religious discrimination in violation of 42 U.S.C. § 1981(a) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). Defendants have moved for summary judgment on all of his claims. For the reasons stated below, the Court grants defendants' motion.

## Background[1]

Westside Holistic Family Center is a nonprofit that provides a variety of services

---

[1] Throughout his response to defendants' statement of material facts, Matthews argues that "the cited source is not an affidavit as required by Rule 56(e) of the Federal Rules of Civil Procedure." *See, e.g.*, Pl.'s Resp. to Defs.' LR 56.1(a) Stmt. ¶¶ 1-3. Aside from this conclusory assertion, he does not explain why the defendants' affidavits are invalid. All of the affidavits are made under oath, signed, dated, and sealed by a notary. The Court therefore considers the affidavits in deciding this motion.

to the Austin and West Garfield communities in Chicago. Between 1996 and June 30, 2010, Westside operated and managed the Westside Alternative High School pursuant to a contract with Youth Connection Charter Schools (YCCS), which, in turn, had a charter with Chicago Public Schools. Matthews, who is African American, was hired to teach at the school in 1999.

In October 2008, Daisy Lopez was hired as principal of the school. Between March 2009 and July 2010, Lopez disciplined Matthews ten times for a variety of infractions. The charged infractions included gross insubordination (refusal to comply with a directive to assist another teacher with moving classroom items), failing to prepare for class, failing to submit lesson plans, turning in lesson plans that were missing required elements, screening a film that was unrelated to the lesson plan, failing to grade student work, failing to submit grades on time, refusing to submit grades for certain students (due to lack of attendance), grading according to subjective criteria, failing to take attendance, and playing gospel music in the classroom.

In addition, defendants contend that Matthews was unwilling or unable to incorporate new teaching methods into his lessons. *See* Pl.'s Resp. to Defs.' LR 56.1(a) Stmt. ¶¶ 11-17. Shortly before Lopez was hired, her predecessor wrote a memorandum to Matthews about this problem, noting,

> Over the years, you have had some difficulties in the areas of instructional planning, organizing, and delivery. It appears that it takes you longer than reasonably expected to grasp new instructional and curriculum approaches. Accordingly, I thought it would be in the best interest of *our students*, your professional growth, and the overall redesign and new model development that we will use this upcoming school year to do some one-on-one training with you.

Defs.' LR 56.1(a) Stmt., Matthews Dep., Ex. 17 at 1. Lopez allegedly encountered

2

similar difficulties, describing Matthews as actively resistant to new teaching methods. *See id.*, Lopez Aff. ¶ 4 ("Whenever I suggested changes to his teaching style, classroom management or approach to discipline . . . he would tell me that his approach was 'what these black children need' and not the 'motherly' approach he claimed I was promoting."). Matthews himself sent a memorandum to Gale Lindo, president of Westside, in which he said that "[b]lack students today . . . don't need experimental methods, they need a structured education," and "Ms. Lopez doesn't have enough knowledge to be a principal or she has the wrong understanding about what it takes to be a principal in a school in the black community." Defs.' LR 56.1(a) Stmt., Lopez Aff., Ex. 1 (Matthews Mem. to Lindo), at 5.

Lopez was also critical of Matthews's approach to classroom management. He regularly sent students to Lopez's office for minor offenses (such as forgetting their school supplies), and on one occasion, he sent his entire classroom to her office. Additionally, Lopez observed Matthews using the word "nigger" during class. During his deposition, Matthews testified, "Yes. I used the word 'nigger.' . . . I did, most certainly did. . . . Can I reiterate? Yes, I used the word nigger." Defs.' LR 56.1(a) Stmt., Matthews Dep. at 200-01. Asked why he used this word with the students, Matthews explained,

> Well, I use it in a very educational manner. A lot of time I use it in a humorous manner, not putdown. . . . Black folks use the word nigger all the time. . . . I might say to a student, I'd say, "You know what?" I call them a negro; okay? I said, "I really, really would like to call you nigger." Like that.

*Id.* at 201-03. Thus, Matthews contends, he did not use the word in a manner that would demean his students.

3

In July 2010, YCCS assumed control of the school. Although all of the teachers were laid off, they were allowed to reapply for their positions. Matthews did so but was not rehired. A few months later, Matthews showed up to a meeting of the Westside board and asked to be placed on the agenda. The board refused his request.

Matthews filed this suit in April 2012. He contends that Lopez discriminated against him on the basis of race and religion while he was employed by Westside. He also argues that her superiors, Joanne Anderson and Linda Vick, tolerated this discrimination.

It does not appear from Matthews's complaint that he is suing Westside, Lopez, Anderson, or Vick for his layoff or his non-rehiring by YCCS. At least Matthews does not attempt to support such a claim in his response to defendants' summary judgment motion. In his affidavit, Matthews states that he "recall[s] that prior to the end of the [2009-10] school year nine of the twelve African American staff and faculty members, with the exception of myself and two others, were either discharged from employment, or resigned, or were forced into voluntarily terminating their employment with defendant . . . due to defendant Lopez's direct and indirect actions." Pl.'s Resp. to Defs.' LR 56.1(a) Stmt., Matthews Aff. ¶ 10. Aside from this statement, he does not present any evidence to support the proposition that his or the other employees' separation were racially motivated.

## Discussion

A party is entitled to summary judgment if it shows that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). On a motion for summary judgment, the Court views the evidence in the light most

favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Srail v. Vill. of Lisle*, 588 F.3d 940, 943 (7th Cir. 2009). Summary judgment is inappropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

**A.      Race discrimination claims**

Matthews alleges race discrimination in violation of Title VII and section 1981. Title VII prohibits an employer from discriminating against an employee "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Section 1981 prohibits race discrimination in the making and enforcement of contracts. 42 U.S.C. § 1981(a). The right to make and enforce contracts is defined as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). In the Seventh Circuit, "the same prima facie requirements [apply] to both Title VII and § 1981 discrimination claims." *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir. 2007). The Court therefore addresses these claims together.

Although Matthews responded to defendants' statement of material facts, his one-page brief does not advance a theory of liability or address defendants' substantive arguments in favor of summary judgment. His complaint states that he is asserting Title VII and section 1981 claims, but he does not specify the nature of his claims there either. Thus, as a threshold matter, the Court must pin down exactly what sort of claim or claims Matthews is asserting, bearing in mind that "a pro se complaint, however

inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

It appears to the Court that Matthews is asserting two types of race discrimination claims: a claim that he was subjected to different terms and conditions of employment, and a claim that he was subjected to a hostile work environment. Defendants do not directly address the latter sort of claim in their motion, nor does Matthews in his responsive materials, but the Court believes these materials, fairly read, advance a hostile work environment claim. First, Matthews's complaint alleges that defendants failed to "provide a non-discriminatory work environment." Second Am. Compl. ¶ 43. And Matthews's affidavit, which he submitted in response to the motion for summary judgment, repeatedly alleges that Lopez "engaged in unwarranted harassment and disrespectful conduct toward me," and that "no action [was] taken . . . to bring [her] in line with defendant Westside Holistic Family Services' workplace anti-harassment and anti-discrimination policy." Pl.'s Resp. to Defs.' LR 56.1(a) Stmt., Matthews Aff. ¶¶ 11-12; *see also, e.g., id.* ¶ 14 ("Defendant Lopez engaged in further unwarranted harassment and disrespectful conduct toward me . . . ."); *id.* ¶ 18 ("I submitted a formal written complaint to defendant Westside Holistic Family Services' Human Resource personnel . . . about the ongoing harassment and disrespectful treatment that I was being subject to at the hands of defendant Lopez."). The Court will address the hostile work environment claim first.

1. **Hostile work environment claim**

To establish a race discrimination claim based on a hostile work environment, Matthews must point to evidence tending to show that (1) the work environment was

<006>6</006>

both subjectively and objectively offensive, (2) the harassment was based on his race, (3) the conduct was severe or pervasive, and (4) there is a basis for employer liability. *See Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 912 (7th Cir. 2010).[2] The Court must "consider the totality of the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Ellis v. CCA of Tenn. LLC*, 650 F.3d 640, 647 (7th Cir. 2011).

Matthews alleges that Lopez harassed and, as he puts it, "disrespected" him by (1) entering his classroom and demanding that he remove a covering from the window on his classroom door; (2) removing the covering from the window on his classroom door; (3) allowing an intoxicated and belligerent student to enter his classroom; (4) loaning his classroom television to another teacher and denying his claim to ownership of the television in front of his students; (5) allowing a student to wear headphones during class against his wishes; (6) failing to make sufficient efforts to recover a pen that was allegedly stolen by a student; (7) failing to take disciplinary action against disruptive students; (8) denying him access to student files because he had not filed a written request for the files; (9) returning a student to his class, even though the student had arrived late and refused to sit in his assigned seat, and asking the student whether he would be willing to sit in another seat (Matthews objected to this, and Lopez left with the student); (10) assigning students to his class without notice; (11) requiring him to provide grades to students who had not attended his class; (12) failing to discipline a

---

[2] The last of these elements would not apply, of course, to a hostile work environment claim under section 1981 against an individual defendant, but the Court need not dwell on that point here, as Matthews's claim founders on other grounds.

special education teacher who interfered with his instruction to a student (Matthews objected to the special education teacher signing the student's name to a test he had administered); (13) requiring him to keep his classroom door open; and (14) requiring him to change classrooms two times.

Putting aside whether a reasonable fact finder could conclude that this conduct, taken together, was objectively offensive in the way required to constitute a hostile work environment, no reasonable jury could find that it was based on Matthews's race. There is no evidence that Lopez ever used a racial epithet towards Matthews (or any other teacher) or that she mentioned race in the context of these decisions. That is not the end of the story, of course, because conduct need not be overtly racially-based to be actionable. But even though conduct does not need to be "explicitly racial" to give rise to a hostile work environment claim, Matthews must show that it "ha[d] a racial character or purpose." *Vance v. Ball State Univ.*, 646 F.3d 461, 470 (7th Cir. 2011) (internal quotation marks omitted). He has offered no evidence from which a reasonable jury could make such a finding (such as evidence comparing his treatment with that of similarly-situated non-African-American teachers). Defendants are therefore entitled to summary judgment on Matthews's hostile work environment claim.

### 2. Terms and conditions claim

The Court turns next to Matthews's claim that he was subjected to harsher conditions of employment due to his race. A plaintiff may establish race discrimination by providing direct evidence of discrimination or by proceeding under the indirect method of proof. *Mintz v. Caterpillar Inc.*, 788 F.3d 673, 679 (7th Cir. 2015). Under the direct method, a plaintiff must provide "either direct or circumstantial evidence that

would permit a jury to infer that discrimination motivated an adverse employment action." *Langenbach v. Wal-Mart Stores, Inc.*, 761 F.3d 792, 802 (7th Cir. 2014). "Circumstantial evidence can take a number of forms, such as suspicious timing, behavior or comments directed at members of the protected group, evidence showing that similarly-situated employees outside the protected group received systematically better treatment, and evidence that the reason the employer gave for the adverse action was pretextual." *Id.*

Matthews has not presented any direct or circumstantial evidence of discrimination. He therefore must proceed under the indirect method of proof. This requires him to establish a prima facie case by pointing to evidence tending to show that (1) he is a member of a protected class, (2) he met his employer's legitimate job expectations, (3) he suffered an adverse employment action, and (4) similarly-situated employees outside of his protected class were treated more favorably. *Moultrie v. Penn Aluminum Int'l, LLC*, 766 F.3d 747, 753 (7th Cir. 2014). If Matthews fails to show that there is a genuine dispute of material fact regarding any one of these requirements, defendants are entitled to summary judgment on his claim for race discrimination.

The Court will begin with the third requirement. An adverse employment action is a material change to the terms and conditions of employment. *James v. Hyatt Regency Chi.*, 707 F.3d 775, 782 (7th Cir. 2013). To be "material," the change must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.*; *see also Porter v. City of Chicago*, 700 F.3d 944, 954 (7th Cir. 2012) (observing that "not everything that makes an employee unhappy is an actionable adverse action," because "[o]therwise, minor and even trivial employment actions . . . would form the

9

basis of a discrimination suit"). Examples of materially adverse employment actions include "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id.*

Because Matthews does not clarify which of the actions he describes constitute actionable adverse actions under Title VII or section 1981, the Court will assume that he views all of them as such. Most of the alleged incidents of harassment are mere inconveniences; they could not conceivably be adverse actions because they did not involve termination, loss of benefits, demotion, or changes of comparable severity. Matthews's allegations regarding unfair reprimands are also not adverse actions. To "rise to the level of a material adverse employment action," a reprimand must be accompanied by "some tangible job consequence" because "otherwise every reprimand or attempt to counsel an employee could form the basis of a federal suit." *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 731 (7th Cir. 2004); *see also Sweeney v. West*, 149 F.3d 550, 556 (7th Cir. 1998) (declining to broaden definition of adverse employment action to include unfair reprimands). There is no evidence that any of Lopez's reprimands resulted in a tangible job consequence to Matthews.

Matthews alleges that the classrooms he was moved to were inferior to his original classroom. One might argue, then, that the classroom changes signified a constructive demotion. But there is no evidence to support this theory. With regard to the move from room 106 to 101, it is undisputed that the change was part of a school-wide reorganization of classrooms based on subject matter (i.e. science, history,

10

mathematics, etc.).  With regard to the move from room 101 to 102, it is undisputed that the change was intended to assist Matthews with classroom management (unlike room 102, room 101 had a bathroom, which students had reportedly used for smoking during class).  Although room 101 was smaller than room 102, Lopez decreased his class size from 20 to 10 to accommodate the difference in size.  Matthews may have been unhappy about the classroom changes, but they do not suggest a constructive demotion.

Lastly, Matthews alleges that Lopez did not inform him of a June 30 deadline to reapply for his position, and that she held a meeting in June 2010 where she told him and other teachers that they would not need to reapply for their positions.  If there was in fact a June 30 deadline, and Matthews missed this deadline because of Lopez's conduct, it might be argued that he was constructively terminated.  But Matthews concedes that he received a letter from Westside on July 7, 2010 that advised him that YCCS was assuming control of the school, his position was terminated, and if he was interested in reapplying for his position, he was required to contact a woman by the name of Yolanda Thomas.  The letter did not state that there was a deadline to do so. Moreover, Matthews testified that he in fact met with Thomas, she did not inform him of a deadline, and he was allowed to reapply for the position.  Defs.' LR 56.1(a) Stmt., Matthews Dep. at 227-32.  There is therefore no evidence that any deadline had any impact on Matthews's attempt to reapply for his position.

In sum, Matthews has failed to show that there is a genuine dispute of fact regarding whether he was subjected to an adverse action that is actionable under Title VII or section 1981.  For this reason alone, defendants are entitled to summary

judgment on Matthews's claim that he was subjected to race discrimination in the terms and conditions of his employment.

The Court also concludes that Matthews has failed to show that there is a genuine dispute of fact regarding the fourth requirement of a prima facie case. Specifically, although Matthews alleges that Lopez treated him less favorably than non-African Americans, he has not identified a similarly-situated non-African-American employee who was treated more favorably than he was.

For these reasons, defendants are entitled to summary judgment on Matthews's race discrimination claims.

### 3. Section 1981(a) claim against Anderson and Vick

Matthews contends that Anderson and Vick violated section 1981(a) by failing to give him "full and equal benefits of proceedings for the security of his employment retention" and by refusing to allow him "to exercise his right to air his employment termination grievance" before Westside's board. Second Am. Compl. ¶¶ 51-52. Asked to clarify this claim at his deposition, Matthews testified that Anderson, as Westside's executive director, "should have stepped in and stopped [Lopez] and she didn't. So that means that she was negligent." Defs.' LR 56.1(a) Stmt., Matthews Dep. at 296. He also testified that Vick, as president of Westside's board, had a duty and responsibility remedy Lopez's alleged racism. *Id.* at 293-93.

Aside from tolerating Lopez's alleged conduct and denying him the opportunity to air his grievances at a board meeting, Matthews does not contend that Vick or Anderson participated in or contributed to any other instances of race discrimination. Because the Court has already concluded that no reasonable jury could find that

Matthews suffered race discrimination while employed at Westside, Vick and Anderson are entitled to summary judgment on Matthews's section 1981(a) claim.

**B.     Religious discrimination claim**

Title VII prohibits an employer from discriminating against an employee because of his religion.  42 U.S.C. § 2000e-2(a)(1).  Religion is defined to include "all aspects of religious observance and practice, as well as belief."  42 U.S.C. § 2000e(j).  "These provisions of Title VII prohibit an employer from intentionally discriminating against an employee based on the employee's religion, and require an employer to make reasonable efforts to accommodate the religious practices of employees unless doing so would cause the employer undue hardship."  *Porter v. City of Chicago*, 700 F.3d 944, 951 (7th Cir. 2012).

To sustain a claim of religious discrimination, a plaintiff may proceed under either the direct or indirect method of proof, which the Court has described earlier.  *See Martino v. W. & S. Fin. Grp.*, 715 F.3d 195, 201-02 (7th Cir. 2013).   "A plaintiff can also establish a prima facie case of religious discrimination by showing that the observance or practice conflicting with an employment requirement is religious in nature, that she called the religious observance or practice to her employer's attention, and that the religious observance or practice was the basis for her discharge or other discriminatory treatment."  *Id.* at 202 (internal quotation marks omitted).

As with his race discrimination claim, Matthews does not specify the exact nature of his religious discrimination claim.  The Court will therefore address each possibility in turn, beginning with failure to accommodate.

Matthews's only evidence of religious discrimination is the fact that Lopez

13

prohibited him from playing gospel music during class.[3] It is undisputed that she did so because playing this music during class violated the school's First Amendment policy, which barred the school or its teachers from "promot[ing] any particular form of religion." Pl.'s Resp. to Defs.' LR 56.1(a) Stmt. ¶¶ 36-37. No reasonable jury could find that the school was required to accommodate Matthews's desire to play gospel music during class, thereby violating its own First Amendment policy and exposing the school to undue hardship. Illinois law provides that "[a] charter school shall be a public, nonsectarian, *nonreligious*, non-home based, and non-profit school." 105 ILCS 5/27A-5 (emphasis added). Accommodating Matthews thus risked revocation of the school's charter. Moreover, accommodating Matthews would have exposed the school to First Amendment lawsuits from students. "Teachers and other public school employees have no right to make the promotion of religion a part of their job description and by doing so precipitate a possible violation of the First Amendment's establishment clause." *Grossman v. S. Shore Pub. Sch. Dist.*, 507 F.3d 1097, 1099 (7th Cir. 2007).

Matthews also has not presented any evidence that the fact he played gospel music during class (or his religious faith generally) resulted in some other form of discrimination. He does not contend that he suffered other adverse actions stemming from his religious beliefs; his allegations are identical to the race discrimination claim. The Court has already concluded that no reasonable jury could find that those grievances rise to the level of an adverse employment action. His religious

---

[3] Whether Matthews was trying to proselytize his students by playing gospel music is somewhat unclear. At times, he suggests that the music was intended to induce calm in his students. His complaint states, however, that it was for "spiritually [sic] enhancement within the minds of the students under his direction and control." Second Am. Compl. ¶ 49.

discrimination claim therefore fails under both the direct and indirect methods. *See Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) ("Whether the plaintiff proceeds by the direct or indirect method of proof, he must show a materially adverse employment action.").

## Conclusion

For the foregoing reasons, the Court grants defendants' motion for summary judgment [dkt. no. 86] and directs the Clerk to enter judgment in favor of defendants Daisey Lopez, Joanne Anderson, Linda Vick, and Westside Holistic Family Center and against plaintiff Nathanael Matthews.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: August 10, 2015